**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2306-WJM

JACKIE PONIKVAR,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of the Social Security Administration

    Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND
REMANDING TO THE COMMISSIONER**

---

    This is a social security benefits appeal brought under 42 U.S.C. § 405(g).  Plaintiff Jackie Ponikvar ("Plaintiff"), challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability and social security benefits.  The denial was affirmed by an Administrative Law Judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act").  This appeal followed.

    For the reasons set forth below, the ALJ's denial of benefits is reversed and the case is remanded to the Commissioner for rehearing.

## I.  BACKGROUND

    Plaintiff filed a claim for Disability Insurance Benefits alleging disability beginning June 25, 2009.  (Admin. Record ("R.") at 214).  Plaintiff's claim was initially denied on December 16, 2009, alleging disability as of November 27, 2008.  (R. 214.)  Defendant Commissioner denied her application on November 24, 2009.  (R.101).  On December

01, 2009, Plaintiff filed a request for an administrative hearing. (R.104).  On December 20, 2010, and March 22, 2011, hearings were held before Administrative Law Judge Lowell Fortune. (R.13).  On May 06, 2011, the ALJ denied Plaintiff's application.  *(Id.)* Plaintiff timely filed a request for Appeals Council review of the ALJ's decision on May 16, 2011.  (R. 8.)  On August 17, 2012, the Appeals Council denied Plaintiff's request, and thereby adopted the ALJ's decision.  (R.1).  Plaintiff's appeal was timely, and she has exhausted all of her administrative remedies.

      The ALJ found that Plaintiff's severe impairment, for statutory disability purposes, was limited to migraine headaches.  (R. 16).  The ALJ found that Plaintiff's hypertension, heart condition, left shoulder tendonisis, left hip trochanteric bursitis, seizure disorder, and balance disorder were not medically determinable impairments or were not severe because they "would improve significantly with treatment within twelve months.".(R. 17). In making the mental impairment determination, the ALJ commented that "a consultative psychological exam was completely normal and the evidence as a whole, including the report of that exam, contains no diagnosis of any mental disorder." (TR. 17).  The ALJ's residual functional capacity ('"RFC") assessment included the ability to perform light work as defined in 20 CFR 404.1567(b) with the additional limitations that Plaintiff "is unable to perform assembly line work and should avoid all exposure to dangerous machinery, unprotected heights, and power tools." (R. 17).

      On October 4, 2010, Dr. Deborah Green wrote that Plaintiff "presents with c/o pain in her left arm. It has been there for a couple of months. It is difficult reaching in some positions. She cannot on her left side well. It is painful in her left arm to stretch it out. She can get numbness and tingling of the entire arm. She has dropped objects -

glasses." (R. 351).

Dr. Kosta Zinis examined Plaintiff on February 17, 2011, and wrote that Plaintiff's left shoulder had external rotation to 30 degrees on the left, 45 degrees on the right. (R. 348). She reportedly had pain with resisted external rotation as well as pain and weakness with testing of the supraspinatus muscle at 0 and 30 degrees of forward flexion. *(Id.)* Testing revealed positive "empty can," and "lift off" tests, "Yergason's" and Speed's maneuvers, and a positive Hawkins' impingement test. *(Id.)*

On May 6, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 27, 2008, the alleged onset date. (R. 16.) Second, the ALJ determined that Plaintiff had the severe impairment of migraine headaches and noted that Plaintiff had been diagnosed with a left shoulder impairment, but found that this imposed no more than a minimal effect on her ability to work because it would "significantly improve" within twelve months. (R. 16-17). The ALJ also noted that Plaintiff alleged disability due to a depressive order, but found that this was not a medically determinable impairment (R. 17). In light of this RFC finding and the vocational expert's testimony, the ALJ found that Plaintiff could perform her past relevant work as an underwriter, an account

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

manager, and an administrative clerk. (R. 22). The ALJ ultimately found that Plaintiff has not been under a disability as defined under the statute. Plaintiff's claim for Social Security benefits was, therefore, denied. (R. 23).

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council, all of which post-dated the ALJ's May 6, 2011 decision (R. 4-5, 357-405). This new evidence included treatment records from Dr. Euser that post-dated the ALJ's May 2011 decision. (R. 361). In March 2012, Dr. Euser found limited range of motion in her left shoulder, but normal tone and motor strength. (R. 367). Results from a March 2012 MRI of Plaintiff's left shoulder showed "very little rotator cuff tissue remaining." (R. 372).[2]

## II. STANDARD OF REVIEW

The Court reviews decisions of the Commissioner to determine (1) whether substantial evidence in the record as a whole supports the factual findings, and (2) whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).[3]

---

[2] The Appeals Council found that the additional evidence did not provide a basis for changing the ALJ's decision. (R. 1-5).

[3] "The ALJ must evaluate the claimant's physical and mental impairments." *Farrill v. Astrue*, 2012 WL 2443711, 1 (10th Cir. 2012) (*citing Winfrey v. Chater*, 92 F.3d 1017, at 1023 (10th Cir. 1996)). In doing so, the ALJ must "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e); *see also Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error").

Although a district court will "not reweigh the evidence or retry the case," a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Moreover, the ALJ may "not make speculative inferences from medical reports and may reject a treating physician's opinion outright *only* on the basis of contradictory medical evidence and *not* due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* This duty exists even when the claimant, as here, is represented by counsel. *Id.* at 480.

### III. ANALYSIS

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then filed this action seeking review of that decision. On appeal, Plaintiff raises several issues for consideration—the primary being whether the ALJ erred in failing to offer any 'reaching' limitations in the RFC despite an MRI in the demonstrating degenerative changes to Plaintiff's shoulder. (R. 341-348.) Bound within this issue is whether the ALJ speculated—without substantial evidence in the record—that Plaintiff's shoulder would "improve significantly" in a twelve month period following its onset. [4]

---

[4] As noted later, the Court expresses no opinion as to the other issues identified by Plaintiff in briefing, but encourages the Parties as well as the ALJ, to consider the evidence and issues anew on remand.

Since the Court finds that the ALJ's RFC was not fully and fairly developed because it was not supported by substantial evidence with respect to Plaintiff's shoulder impairments, the Court finds that such error requires remand. And because these same limitations tainted the ALJ's proposed questions to the vocational expert, the Court also finds that this related issue warrants reversal and remand for further consideration. *See Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (recognizing that remand is appropriate where further fact finding is needed).

**A.     RFC Not Supported by Substantial Evidence and is Speculative, Preventing Full and Fair Development of the Record**

Plaintiff attacks the ALJ's findings by contending that the RFC is not based on substantial evidence, and the record was not fully and fairly developed.

The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment of the most a claimant can do despite his or her limitations. *Id.* Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs, laboratory findings, and medical source statements. Soc. Sec. Ruling (SSR) 96–8p (July 2, 1996). An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996):

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case

>           record. The adjudicator must also explain *how any material
>           inconsistencies or ambiguities* in the evidence in the case
>           record were considered and resolved. (*emphasis added*.)

SSR 96–8p. *See also Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff challenges the ALJ's RFC determination. She contends that the ALJ did not take into consideration all medically determinable impairments that were manifest in the record and their related limitations. (ECF No. 16 at 14-15.) Specifically, Plaintiff contends that the most notable example of this error is that the ALJ did not offer any 'reaching' limitations with respect to Plaintiff's shoulder despite an MRI (in the record before the ALJ) that demonstrated significant degenerative changes to Plaintiff's shoulder.[5] (*Id.*) In dealing with this evidence, the ALJ wrote that the shoulder impairment would "improve significantly within twelve months" of Plaintiff's onset and was, therefore, not severe. (R. 17).[6]

---

[5] The ALJ found: "Further, the claimant was diagnosed with impairments of the left shoulder and left hip in February 2011 after experiencing several months of increasing pain. She was prescribed physical therapy and anti-inflammatory medications to treat these impairments. Because her symptoms from these impairments are expected to improve significantly with treatment within 12 months of their onset, the undersigned finds that they will not impose more than a minimal effect on her ability to perform work activities for the required duration of 12 continuous months and are therefore not "severe." (R. 17.)

Preceding the above paragraph, the ALJ discusses other impairments of Plaintiff. It is not entirely clear that the expected "improvement" that the ALJ speculates to applies solely to Plaintiff's shoulder impairment, or that other impairments will also "improve significantly." Upon remand and review of all the evidence—including now what has been filed after the decision—the ALJ should make a specific finding with respect to Plaintiff's shoulder impairment. The decision should guard against 'bundling' of several impairments into one, so that a full and fair record is better developed. *Baca*, 5 F.3d at 480.

[6] The Court also notes that the problem with the ALJ's findings, besides the fact that the ALJ had no reason for believing there would be significant improvement, was that the evidence in question was dated more than twelve months after Mr. Plaintiff's onset. (R. 341, record dated February 22, 2011, more than two years after the onset date). The error in the ALJ's findings is only reinformed by an MRI, dated March 2012, which showed that Plaintiff's shoulder had "very little normal rotator cuff tissue remaining." (R. 372). Such evidence is at direct odds with any

The Court finds that the ALJ erred in making the above finding. The reasons are two-fold. First, there is nothing in the record to support the relevant finding that Plaintiff's shoulder would improve significantly within twelve months. On the contrary, medical evidence in the record by Dr. Zinis provides: (a) that Plaintiff reported pain when she resisted external rotation of the shoulder. This was reflected in the positive Hawkins' impingement test; and (b) that Plaintiff "had a possible rotator cuff tear of the left shoulder" as noted in Dr. Zinis's report. (R. 346-348.) Because of this evidence, the ALJ had no reason for believing there would be significant improvement without further evidence. Indeed, the evidence in (a) and (b) tends to shy away from any finding that the shoulder *would* improve—making any finding that it would do so, in the Court's view, speculative and not based on substantial evidence.[7]  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (stating that an ALJ may "not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.")

Second, and related to the first, the ALJ erred in his duty to contact the treating physician with respect to Plaintiff's shoulder impairment—a duty that rests entirely with the ALJ; ever more so when the ALJ has made a speculative finding. *See White v. Barnhart*, 287 F.2d 907, 909 (10th Cir. 2001). Specifically, here, there is nothing in the

---

notion that Plaintiff's shoulder could improve (or would improve) twelve months after its onset.

[7] The conclusion on Plaintiff's shoulder also falls afoul of what is stated in *Haddock*, where the Tenth Circuit held that the ALJ is required to describe "how the evidence supports each conclusion." 196 F.3d at 1088. In the instant case, if the evidence is not in the record to support a conclusion, it follows that it cannot not buttress a conclusions either.

record to support that there would be "significant improvement" of Plaintiff's left shoulder. (R. 17.) At best, there is a possible ambiguity; but even this should have prompted the ALJ to seek further evidence from the treating physician to fully and fairly develop the record. The Court finds as much. *See Baca*, 5 F.3d at 480 (stating that the ALJ also has a basic duty of inquiry to "develop the record as to material issues").

Accordingly, because of the above errors, the Court finds that the ALJ's decision warrants reversal. And the deficiencies in the ALJ decision require further consideration upon remand. *See Flaherty*, 515 F.3d at 1070 (stating that a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings").

### B. The ALJ's hypothetical questions to the vocational expert did not precisely reflect Plaintiff's limitations

Plaintiff contends that the ALJ erred with respect to the hypothetical questions proposed to the vocational expert ("VE") because they did not reasonably reflect Plaintiff's limitations. (ECF No.16 at 15.) Such error, Plaintiff says, derives from the RFC determination; a finding that lacked reference to Plaintiff's shoulder limitations because the ALJ made a finding that Plaintiff's shoulder would "significantly improve within twelve months" (despite the absence of such evidence in the record to support the finding). (R. 17) Because of this error, Plaintiff contends that this led the ALJ to error with respect to questions posed to the VE. The Court agrees.

As noted in *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996), when deficiencies in the RFC finding are also carried over into the hypothetical questions proposed to the VE at step five of the analysis, this results in a defective VE

determination.  The logic then follows that because the VE questions are defective, the ALJ errs on the basis that its step five analysis lacks precision as to all of a plaintiff's proper medical limitations.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (stating that "testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")

The problems identified in *Winfrey* and *Hargis* are equally present in the instant case.  Like those cases, the ALJ's questions, here, lack precision because of the deficiencies discussed above in Section III. A.  Because the ALJ did not provide the vocational expert with the correct questions (because the ALJ made speculative findings with respect to the time in which Plaintiff's shoulder would improve at R. 17) this misled, or, at best, would have confused the vocational expert because the VE was not armed with the necessary evidence to make an informed decision.  The Court thus concludes that because the ALJ's omission is material, it is sufficient to taint the substantiality of the vocational expert's testimony.  *Hargis*, 945 F.2d at 1492.  And since the evidence is tainted, substantial evidence is lacking in this case for the ALJ to have made the correct determination as to Plaintiff's claim to disability benefits at step five of the analysis.  Remand is required to resolve these deficiencies.  The Court finds as much.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

**C.      Harmless Error**

Finally, it is worth addressing the fact that Commissioner's seems to argue: (1) that harmless error doctrine applies, or (2) "even if the ALJ failed to properly evaluate Plaintiff's alleged impairments", that this Court should not make a finding of disability, and that Plaintiff's relief should be limited to remand.  (ECF No. 19 at 27, n. 9.)    With respect to this latter point, the Court ultimately adopts this relief in the instant Order.

But with respect to (1), courts apply harmless error cautiously in the administrative review setting.  *Fischer-Ross.*, 431 F.3d at 733.  An error is only harmless when the court can "confidently say that no reasonable administrative fact-finder, following the correct analysis, could have resolved the factual matter in any other way.' *Id.* at 733-34; *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)

Here, the Court has no confidence that the ALJ's deficiencies could be resolved another way because, *inter alia*, the speculative nature of the ALJ's finding as addressed in Section III. A, above.  *See Lax*, 489 F.3d at 1084.  What evidence does exist in the record tends to *point away* from the any finding that Plaintiff's shoulder would "significantly improve".  (*emphasis added*)  (R. 17)  The ALJ's error is thus *not* harmless because the jobs identified by the vocational expert are not predicated on the correct limitations that derive from a correct RFC determination.  These errors are anything but harmless.  Indeed, the Court finds this type of error is more toward the significant end of the spectrum which does nothing to save the decision from remand.

**D.     Remaining Arguments**

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings.  But because the Court finds that the ALJ's RFC was not supported by substantial evidence, *inter alia*, above, it need not address the other arguments raised by Plaintiff.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered.  It is entirely possible that, given the passage of time and the positive manner in which it appeared Plaintiff's life was changing as of the hearing before the ALJ, the ALJ could arrive at the same conclusion and find that Plaintiff is not disabled.  But, for the reasons stated earlier, it is critical that the ALJ fulfill his duty in recontacting the treating physician to substantiate any further findings regarding (1) Plaintiff's shoulder impairment, and (2) the affect it has on her ability to perform work.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 19th day of August, 2013.

BY THE COURT:

William J. Martínez
United States District Judge